**L.B. LOVELACE, Plaintiff-Appellant,**

**v.**

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant-Appellee.**

No. 86–4820
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 26, 1987.

Laurel G. Weir, Thomas L. Booker, Philadelphia, Miss., for plaintiff-appellant.

Daniel E. Lynn, Asst. U.S. Atty., Jackson, Miss., for defendant-appellee.

Before RUBIN, RANDALL, and HIGGINBOTHAM, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The Secretary of Health and Human Services, through his delegates, denied an application for disability insurance benefits and Supplemental Security Income on the basis of an Administrative Law Judge's finding that an applicant who was suffering from hypertension, arthritis, back trouble, and obesity was physically able to perform the kind of unskilled and semi-skilled work he had done in the past as a janitor, dishwasher, or assembly line worker. The ALJ, whose decision was affirmed without further reasons by the Appeals Review Council, based his decision in part on the opinion by examining physicians that the applicant's condition could be improved by medication and on the thesis that obesity is per se remediable. The decision was based on automatic adoption of these premises without considering the applicant's testimony that he was so poor he could not afford the prescribed medicines and without determining whether it was indeed within the power of this overweight applicant to lose enough weight to regain his ability to work. We, therefore, reverse the district court's summary judgment denying the applicant relief and remand the case for further proceedings.

I.

L.B. Lovelace was 47 years old at the time of the administrative hearing and is now 50. He has a ninth grade education. He is five feet eleven inches tall, and, at the time of the hearing, weighed 252 pounds, down from his earlier weight of 290 pounds. Most of his work experience was as a semi- or unskilled worker. He asserts that he is disabled because of back trouble, gout, hypertension, and obesity, as well as severe pain.

Lovelace testified that he hurt his back while moving a deep freeze at work. He has twice tried to work since then but was not able to do so. He has severe pain upon constant or severe movement of his back or when standing for periods longer than an hour or two. He has pain, stiffness, and swelling in his left knee. His neck and shoulders are sore, and his right elbow is painful and stiff. He has pain and soreness in his right big toe. He feels that his tailbone is stiff, causing him to become sore when he sits for an extended period of time.

He lives alone, 27 miles from town, and prepares his own meals. His spends his days sitting in the sun or walking in the yard, and, in good weather, walks about a half mile from home, using a stick to help him. He can no longer hunt, fish, cut wood for his fireplace, or tend his garden. A neighbor cuts wood for him. He owns a 1965–model truck, which he drives on occasion, but he could not drive to the hearing. He pays $80 a month to buy his home, which is financed by a government program. Sometimes he borrows money to make the payments. He receives $76 in food stamps but has no other income, so it is unclear from the record how he manages to make payments on his home and subsist. He cannot afford to buy the medicine the doctors have prescribed although he does buy and use aspirin.

Two physicians examined Lovelace. Dr. Prentiss F. Keyes had been treating him at

the hypertensive clinic of the Kemper County Health Department in Mississippi for more than a year. He had prescribed Feldene, an anti-inflammatory medication, but Lovelace told him at a later visit that he had not been able to have the prescription filled because he did not have the money. In addition, he "was thought to have gout but the County Health Department was not able to furnish him with medication for gout."

On Dr. Keyes' recommendation, Lovelace was hospitalized at Matty Hersee Hospital in Meridian, Mississippi. Dr. Pat H. Gill examined Lovelace at the hospital. During the course of the examination, Lovelace reported that he "does not drive because he cannot use the left leg to operate the clutch." Dr. Gill diagnosed Lovelace as having hypertension, which was uncontrolled despite treatment and, by history, back and multiple joint pain and dizziness. After the hospitalization, Dr. Gill prescribed five medications: HCTZ 50 mg. once daily; Slow-K three times a day; Allopurinol 100 mg. once daily; Lopressor 100 mg. once daily; and Indocin SR/75 once daily.

Lovelace later told Dr. Keyes that he was financially unable to buy these medicines. Dr. Keyes thought there was a "good possibility" that Lovelace's condition "could be benefitted a great deal if he were able to buy his medication and take it properly." He found that, in an eight-hour workday, Lovelace could sit two hours, stand one hour, and walk one hour. Presumably, this means that Lovelace could work for only four hours out of an eight-hour day, but the doctor's report does not make this clear. Elsewhere in the same report, Dr. Keyes indicated that Lovelace could lift or carry weights up to five pounds frequently, weights up to twenty-five pounds occasionally, but heavier weights never. He thought Lovelace could tolerate "some" pushing or pulling, but evaluated Lovelace as being unable to use either foot for repetitive movements and "not at all" able to squat, crawl, or climb although he could bend and reach "occasionally." Neither doctor expressed an opinion that Lovelace was (or was not) disabled.

The Secretary, through his delegates, concluded that the medical evidence and the testimony showed that Lovelace had the ability to do the work he had done in the past. A person who can do the work he has done in the past cannot, of course, be considered disabled.[1]

## II.

We review administrative findings under the Social Security Act only to determine whether they are supported by substantial evidence on the record as a whole and whether the Secretary applied the proper legal standards in reaching his decision.[2] An individual who claims disability insurance benefits has the burden of proving his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted ... for a continuous period of not less than 12 months."[3] If the claimant shows that he is no longer capable of performing his past work, the burden shifts to the Secretary to show that he can engage in some other type of substantial gainful employment.[4] Disability for Supplemental Security Income is defined in the same terms as disability for social security disability insurance: inability to engage in substantial gainful activity.[5] The standard for judicial review is likewise the same for both programs.[6] Therefore, we rely on social-security-dis-

---

1. 20 C.F.R. §§ 404.1520(e), 416.920(e) (1986); *Jason v. Heckler,* 767 F.2d 82, 84–85 (5th Cir. 1985) (per curiam).

2. *Strickland v. Harris,* 615 F.2d 1103, 1108 (5th Cir.1980); *White v. Harris,* 605 F.2d 867, 869 (5th Cir.1979) (per curiam).

3. 42 U.S.C. § 423(d)(1)(A) (1982); *Demandre v. Califano,* 591 F.2d 1088, 1090 (5th Cir.) (per

curiam), *cert. denied,* 414 U.S. 952, 100 S.Ct. 428, 62 L.Ed.2d 323 (1979).

4. *White,* 605 F.2d at 869.

5. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A) (1982).

6. 42 U.S.C. §§ 405(g) and 1383(c)(3) (1982).

ability-insurance cases as well as Supplemental Security Income cases without distinction.[7]

The Secretary has promulgated regulations that establish a five-step procedure for sequentially evaluating a claim and determining whether a claimant is disabled.[8] First, a claimant who at the time of his disability claim is engaged in substantial, gainful employment is not disabled.[9] Second, the claimant is automatically denied benefits if the asserted impairment is not severe, without consideration of his age, education, or work experience.[10] Third, if the asserted impairment is severe, the claimant is perforce disabled if his impairment meets or equals an impairment described in the Listings.[11] Fourth, a claimant with a severe impairment that is not per se disabling is denied benefits if he is capable of doing past relevant work.[12] Fifth, a claimant who cannot return to past relevant work is denied benefits if he can engage in work available in the national economy. In this step, the claimant's residual functional capacity, age, education, and work experience are considered.[13] A claimant who cannot return to work and who cannot engage in other work is disabled.[14] A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.[15]

In recent decisions, we have reviewed a number of cases in which the disability claim was denied at the second step of the process when the ALJ found that the claimant did not suffer from a "severe impairment."[16] The current regulations state that an impairment "is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."[17] Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs."[18] We have held that the "significantly-limit" language of the "severity" regulation must be read in context with a predecessor regulation defining a "non-severe impairment" as a "slight neurosis, slight impairment of sight or hearing, or other slight abnormality or combination of abnormalities."[19] The standard expressly established by the earlier regulation continues to be the proper legal standard to be applied in determining whether an ailment constitutes a severe impairment.[20] As the Eleventh Circuit held in *Brady v. Heckler*, "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."[21] Our reading of the "severity" regulation com-

**7.** *Strickland,* 615 F.2d at 1105–06.

**8.** 20 C.F.R. §§ 404.1520, 416.920 (1986).

**9.** *Id.* §§ 404.1520(b), 416.920(b).

**10.** *Id.* §§ 404.1520(c), 416.920(c).

**11.** *Id.* §§ 404.1520(d), 416.920(d).

**12.** *Id.* §§ 404.1520(e), 416.920(e).

**13.** *Id.* §§ 404.1520(f), 416.920(f).

**14.** *Luevenia Davis v. Heckler,* 759 F.2d 432, 435 (5th Cir.1985).

**15.** *Barajas v. Heckler,* 738 F.2d 641, 643 (5th Cir.1984) (per curiam).

**16.** *Luevenia Davis,* 759 F.2d at 435; *Stone v. Heckler,* 752 F.2d 1099, 1101 (5th Cir.1985);

*Martin v. Heckler,* 748 F.2d 1027, 1032–34 (5th Cir.1984); *Barbara Davis v. Heckler,* 748 F.2d 293, 296 (5th Cir.1984) (per curiam); *Estran v. Heckler,* 745 F.2d 340, 340–41 (5th Cir.1984) (per curiam).

**17.** 20 C.F.R. §§ 404.1521(a), 416.921(a).

**18.** *Id.* §§ 404.1521(b), 416.921(b).

**19.** *Estran,* 745 F.2d at 340–41; 20 C.F.R. § 404.-1502(a) (1968).

**20.** *Estran,* 745 F.2d at 342.

**21.** 724 F.2d 914, 920 (11th Cir.1984), *cited in Estran,* 745 F.2d at 341. *See also Chico v. Schweiker,* 710 F.2d 947, 948–52, 954 & n. 10 (2d Cir.1983); *Taylor v. Schweiker,* 739 F.2d 1240, 1243 n. 2 (7th Cir.1984); *Evans v. Heckler,* 734 F.2d 1012, 1014 n. 3 (4th Cir.1984); *Hundrieser v. Heckler,* 582 F.Supp. 1231, 1234–39 (N.D.Ill.

ports with the Secretary's understanding of his own regulation.[22]

The ALJ's opinion does not make clear whether he denied Lovelace's claim at the second step of the disability-determination process or at the fourth. Because of the conclusion we reach on other issues, we merely call to the Secretary's attention the need to make clear the step at which decision is reached in order that his decision may adequately be reviewed.

### III.

■ A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.[23] If, however, the claimant cannot afford the prescribed treatment or medicine, and can find no way to obtain it, "the condition that is disabling in fact continues to be disabling in law."[24] As this circuit did, in *Taylor v. Bowen*,[25] every other circuit that has considered the question, so far as we can find, has concluded that the medicine or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered. Decisions to this effect have been rendered in the Fourth,[26] Eighth,[27] and Tenth Circuits.[28] To a poor person, a medicine that he cannot afford to buy does not exist.

Nevertheless, evaluating the disability of persons whose disabling maladies might be remedied by medication, the Secretary continues to consider able to work those too poor to be able to afford the medicine that alone might enable them to return to work. This ignores economic reality.

■ In like disregard of reality, the Secretary continues to hold that a person who is disabled because of obesity has a condition that is per se remediable, without examining the medical condition and personal factors that might make it possible or impossible for a particular disabled person to remedy his obesity. As we held in *Scott v. Heckler*,[29]

> Significant weight loss is indeed difficult even for the iron willed. For the less determined, who suffer from other painful and debilitating impairments that restrict movement and no doubt sap the resolve for self-improvement, such a significant loss of weight may be impossible. Alcoholism may be considered a disabling impairment despite the fact that a doctor has ordered the alcoholic to stop drinking. Whether or not [the claimant] has the ability to control [his] eating habits is at least a fact question, not a matter to be determined by *a priori* judgment, for certain impairments, although initially self-inflicted, may become diseases that either contribute to an overall disability or are of themselves disabling.

■ The rejection of Lovelace's claim suffers from a third defect. In reaching his decision, the ALJ expressed a good deal of skepticism regarding Lovelace's complaints of pain, particularly because Lovelace did not appear to be experiencing severe pain at the hearing. While it is the task of the ALJ to resolve conflicts in the evidence and to make credibility determinations,[30] his decisions must be supported by

1984); *Trafton v. Heckler*, 575 F.Supp. 742, 745–46 (D.Me.1983).

**22.** *Brady*, 724 F.2d at 919–20. *See also Martin*, 748 F.2d at 1032; *Estran*, 745 F.2d at 340–42.

**23.** 20 C.F.R. §§ 404.1530(a), (b) and 416.930(a), (b) (1986). *Knox v. Finch*, 427 F.2d 919, 921 (5th Cir.1970); *McCarty v. Richardson*, 459 F.2d 3, 4 (5th Cir.1972) (per curiam); *Stillwell v. Cohen*, 411 F.2d 574, 575–76 (5th Cir.1969); *Whaley v. Gardner*, 255 F.Supp. 862, 867 (E.D. Mo.1966), *aff'd*, 374 F.2d 9, 11 (8th Cir.1967); 20 C.F.R. §§ 404.1530(b), 416.930(b) (1985).

**24.** *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir.1986).

**25.** *Id.*

**26.** *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir.1986); *Millner v. Schweiker*, 725 F.2d 243, 245 n. 6 (4th Cir.1984); *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir.1984).

**27.** *Dover v. Bowen*, 784 F.2d 335, 337 (8th Cir. 1986); *Benson v. Heckler*, 780 F.2d 16, 18 (8th Cir.1985); *Tome v. Schweiker*, 724 F.2d 711, 714 (8th Cir.1984).

**28.** *Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir.1985).

**29.** 770 F.2d 482, 486–87 (5th Cir.1985).

**30.** *Allen v. Schweiker*, 642 F.2d 799, 801 (5th Cir.1981) (per curiam); *Gaultney v. Weinberger*, 505 F.2d 943, 946 (5th Cir.1974).

substantial evidence.[31] Even if a person's demeanor can be taken to reflect his degree of pain when that pain is chronic, the issue is not how much pain Lovelace suffers when he is at rest. The relevant question is how much pain he experiences when trying to work. Lovelace's demeanor at the hearing sheds little, if any, light on that question.[32]

Because the Secretary denied disability benefits to Lovelace based in large part on the rationale that his condition might be alleviated by medicine he had no money to buy, his disabling obesity is per se remediable, and his general appearance at the hearing was not suggestive of severe pain, we reverse the district court's summary judgment denying disability benefits to this hypertensive, arthritic, obese claimant and remand for an individualized determination of his ability to remedy the ailments that hinder him and his capacity to work when these factors are fully considered.

---

**31.** *Strickland,* 615 F.2d at 1108.

**32.** *Wilson v. Heckler,* 734 F.2d 513, 518 (11th Cir.1984) (per curiam); *Reinhart v. Secretary,* *HHS,* 733 F.2d 571, 573 (8th Cir.1984); *Aubeuf v. Schweiker,* 649 F.2d 107, 113 (2d Cir.1981).