Roberta RICHARD

v.

SECRETARY OF HHS.

No. 9:93–CV–56.

United States District Court,
E.D. Texas,
Lufkin Division.

July 31, 1995.

Robert Wortham, East Texas Legal Services, Beaumont, TX, for plaintiff.

Steven Mason, Ass't United States Attorney, Tyler, TX, for defendant.

## MEMORANDUM ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

HANNAH, District Judge.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Secretary of Health and Human Services denying plaintiff's applications for supplemental security income benefits.

The court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, at Beaumont, Texas, for consideration pursuant to applicable laws and orders of this court. The court has received and considered the Report of the United States Magistrate Judge filed pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the magistrate judge are correct and the report of the magistrate judge is **ADOPTED.** A final judgment will be entered in this case in accordance with the magistrate judge's recommendations.

### FINAL JUDGMENT

This action came on before the Court, Honorable John Hannah, Jr., District Judge, presiding, and the issues having been duly considered and a decision having been duly rendered, it is

**ORDERED** and **ADJUDGED** that plaintiff take nothing, the decision of the Secretary of Health and Human Services is **AFFIRMED,** and this case is **DISMISSED.**

## Roberta RICHARD

v.

## SECRETARY OF HEALTH AND HUMAN SERVICES.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

### I. *Introduction*

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Secretary of Health and Human Services ("Secretary") denying plaintiff's applications for supplemental security income benefits ("SSI"). She now contests the Secretary's decision by asserting that the Administrative Law Judge ("ALJ") erred in finding that plaintiff was not disabled.

This case has been referred to the undersigned United States magistrate judge for review, hearing if deemed necessary, and submission of a report with recommended findings and conclusions. *See* 28 U.S.C. § 636(b)(1)(B) and the Local Rules for the Assignment of Duties to United States Magistrates. For the reasons discussed below, it is the magistrate judge's recommendation that the ALJ's finding be affirmed.

### A. *Judicial Review*

■ The limited role of the court on judicial review is to determine whether the Secretary applied the proper standards in reaching her decision, and whether the Secretary's decisions are supported by "substantial evidence." *Lovelace v. Bowen,* 813 F.2d 55, 57 (5th Cir.1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Marcello v. Bowen,* 803 F.2d 851 (5th Cir. 1986) (citing *Jones v. Heckler,* 702 F.2d 616, 620 (5th Cir.1983)).

■ A determination as to whether there is substantial evidence in the entire record to support the fact findings or decision of the Secretary, as the trier of facts, does not involve reweighing the evidence, or trying the issues de novo, or substituting the judgment of the court for that of the Secretary. *Neal v. Bowen,* 829 F.2d 528, 530 (5th Cir.

1987); *Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir.1987); *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir.1986). Rather, this court must "scrutinize the record in its entirety to determine whether substantial evidence supports the Secretary's findings." *Ransom v. Heckler,* 715 F.2d 989, 992 (5th Cir.1983). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *See Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

■ The elements of proof to be weighed in determining whether substantial evidence exists include: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain; (4) claimant's educational background, age, and work history. *Owens v. Heckler,* 770 F.2d 1276, 1279 (5th Cir.1985) (citing *DePaepe v. Richardson,* 464 F.2d 92, 94 (5th Cir.1972)).

The standard for judicial review is the same for both Social Security Disability Insurance ("DIB") and Supplemental Security Income ("SSI") cases. 42 U.S.C. §§ 405(g), 1383(c)(3) (1982). The court, therefore, relies on DIB cases, as well as SSI cases without distinction. *Lovelace v. Bowen,* 813 F.2d 55, 57–58 (5th Cir.1987); *Strickland v. Harris,* 615 F.2d 1103, 1105–06 (5th Cir.1980).

■ Upon finding substantial evidence, the court may only review whether the Secretary has applied proper legal standards and conducted the proceedings consistently with the statute and regulations. *Bormey v. Schweiker,* 695 F.2d 164, 168 (5th Cir.1983), *cert. denied,* 462 U.S. 1121, 103 S.Ct. 3091, 77 L.Ed.2d 1351 (1983).

### B. *Eligibility for Disability Insurance Benefits*

■ To qualify for disability insurance benefits, the plaintiff must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423.

Those claiming disability insurance benefits under the Social Security Act have the burden of proving their disability. *Demandre v. Califano,* 591 F.2d 1088 (5th Cir.1979); *Rhynes v. Califano,* 586 F.2d 388 (5th Cir. 1978); *Kirkland v. Weinberger,* 480 F.2d 46 (5th Cir.1973), *cert. denied,* 414 U.S. 913, 94 S.Ct. 255, 38 L.Ed.2d 155 (1973).

■ Establishment of a disability is a two-step process. First, plaintiffs must prove that they suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Physical or mental impairment means "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable, clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Second, plaintiffs must prove that an impairment render them unable to engage either in the work they previously performed or other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

■ Consequently, proof of the existence of a disease or an impairment, by itself, does not establish a disability. The plaintiff must also show preclusion from engaging in any substantial gainful employment. *Herridge v. Richardson,* 464 F.2d 198 (5th Cir. 1972); *Ratliff v. Richardson,* 445 F.2d 440 (5th Cir.1971). Title 42 U.S.C. § 423(d)(2)(A) provides in part that one's physical or mental impairment must be of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy regardless of whether such work exists in the immediate area in which she lives, a specific job vacancy exists for him, or she would be hired if she applied for work. The burden is a heavy one, so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker,* 660 F.2d 1078, 1083 (5th Cir. 1981).

## C. *Exhaustion of Administrative Remedies*

### (1) General Requirements

The administrative steps which a social security disability claimant must exhaust before bringing suit in federal district court are summarized in *Harper v. Bowen,* 813 F.2d 737, 739 (5th Cir.1987) as follows:

The Secretary has established a regulatory system for administrative review, leading up to a final decision that may then be appealed to the district court. The process is begun when an individual files a claim with the SSA for benefits. This claim is either granted or denied, creating an initial determination. *See* 20 C.F.R. §§ 416.1404 to 416.1405. Next, the claimant must file for and receive a request for reconsideration. *See generally* 20 C.F.R. §§ 416.1407 to 416.1422. The Secretary reviews the claim again, and then issues a reconsidered determination. 20 C.F.R. § 416.1420. After obtaining the initial and reconsidered determinations, a dissatisfied claimant may file for an evidentiary hearing before an ALJ. *See generally* 20 C.F.R. §§ 416.1429 to 416.1468. If the claimant still objects to the decision, she or she may appeal the ALJ's determination to the Appeals Council. *See generally* 20 C.F.R. §§ 416.1467 to 416.1483. The decision rendered at the initial, reconsideration, and ALJ stage is binding on the claimant unless further administrative review with the Appeals Council is sought within 60 days. These four steps exhaust the claimant's administrative remedies.

Following this exhaustion of the administrative remedies with a final decision being rendered by the Appeals Council, judicial review may be sought in the district court. 20 C.F.R. §§ 416.1400 and 416.1481. *See also Califano v. Sanders,* 430 U.S. 99, 108, 97 S.Ct. 980, 986, 51 L.Ed.2d 192, 201 (1977) ("Section 205(g) clearly limits judicial review to a particular type of agency action, a 'final decision of the Secretary made after a hearing.' "). Although a decision rendered on a claim at each stage of the proceedings is final and binding on the parties unless they proceed to the next step in the process, the regula-

tory scheme provides that a "final decision" allowing judicial appeal is rendered by the Secretary for the purposes of section 205(g) of the Social Security Act when the Appeals Council either reviews or denies review of the ALJ's decision. *See* 20 C.F.R. §§ 416.1405, 416.1421, 416.1455, 416.1481. After such a "final decision," the claimant has 60 days in which to file for judicial review of the decision or else it is binding. 20 C.F.R. § 416.1481. *Harper v. Bowen,* 813 F.2d 737, 739 (5th Cir.1987), *cert. denied,* 484 U.S. 969, 108 S.Ct. 466, 98 L.Ed.2d 405 (1987).

### (2) Proceedings in This Case

Plaintiff filed an application for supplemental security income on March 27, 1991, alleging disability since 1981, due to "[an] infection & little knots all over [her] body." (Tr. 78). Plaintiff's application was denied administratively, both initially and on reconsideration.

Dissatisfied with those determinations, plaintiff requested her claim be considered *de novo* by an Administrative Law Judge of the Social Security Administration. Plaintiff's request was granted, and on December 5, 1991, a full hearing was conducted at which plaintiff appeared and testified. (Tr. 44). The Administrative Law Judge issued a recommended decision on August 25, 1992 and found plaintiff was not disabled under the Social Security Act.

Plaintiff thereafter sought review of the recommended decision before the Appeals Council on September 4, 1992. (Tr. 21–22). The Appeals Council affirmed the ALJ's decision on March 15, 1993. Therefore, the decision of the ALJ became the final decision of the Secretary, of which plaintiff now seeks judicial review.

No issue of failure to exhaust administrative remedies having been raised by defendant, and none being apparent from a review of the entire record, plaintiff has standing to pursue this action for judicial review.

### II. *The Evidentiary Record*

### A. *Age, Education & Work Experience*

Plaintiff was born on October 9, 1951 and was forty years of age at the time of her hearing. (Tr. 48). She has a ninth grade education, although the majority of it was spent in special education classes. (Tr. 68). During her relevant work experience, she worked as a domestic maid. (Tr. 110). Plaintiff testified that she last worked in January of 1991, when she was a part-time health care provider in a private home. (Tr. 48).

### B. *The Medical Evidence*

Plaintiff was hospitalized at Houston County Hospital on December 25, 1990 for breathing problems. She also complained of pain in her arm. (Tr. 145). Dr. William L. Jones, M.D., diagnosed a "possible viral syndrome." (Tr. 145).

In January of 1991, Dr. Michael McLean, M.D., of McLean Orthopaedics in Nacogdoches, Texas, noted he could not detect a neurological problem responsible for plaintiff's complaints of shoulder pain. On February 23, 1991, plaintiff sought emergency room treatment for numbness in her arms, coupled with chest pain. (Tr. 137). Dr. H. Bowmir, M.D., of Houston County Hospital, diagnosed plaintiff as suffering from anxiety and hyperventilation syndrome. Dr. Bowmir prescribed Zanies. (Tr. 140).

In March of 1991, Dr. E.G. Cutshaw, M.D., of Grapeland, Texas, noted plaintiff had "exaggerated pain in her right shoulder." (Tr. 154). X–Rays taken in an attempt to locate the organic origin of the pain were non-conclusive. In April of 1991, Dr. McLean recommended a psychological or psychiatric evaluation, as further X-rays of plaintiff's shoulder had returned normal results. (Tr. 154). The disability examiner, T.B. Hifun, who collected medical evidence obtained via telephone in conjunction with plaintiff's claim for disability benefits, reported that Dr. McLean had last seen plaintiff on March 22, 1991, at which time she exhibited uncontrolled hypertension, and "some anxiety, however, it is not severe and she has not been prescribed any medications for this condition." (Tr. 155).

On July 15, 1991, William G. Wilkerson, M.D., of Memorial Medical Center, Lufkin, Texas, conducted a psychiatric examination

of plaintiff for the Texas Rehabilitation Commission. He noted plaintiff's "histrionic type of overtures in a primitive half raised arm stance and making her right leg jump at the same time. She does not feel that it is voluntary." (Tr. 161). Dr. Wilkerson noted, "Generally, then her symptoms are that she is unable to rest." (Tr. 161). Dr. Wilkerson diagnosed plaintiff as suffering from "Generalized anxiety disorder with conversion mechanisms."[1] Plaintiff also was diagnosed as having angina pectoris, acute gastric ulcer, and arteriosclerotic heart disease. In August, 1991, Dr. Wilkerson prescribed Fenoprogen, a pain medication, for plaintiff's arm. (Tr. 166). He also diagnosed her as having "right-sided weakness, cause occult [sic]."

Ronald G. Corley, M.D., P.A. of Lufkin, Texas, examined plaintiff on four occasions in September and October of 1991. At this time, plaintiff complained of severe shoulder pain. On September 4, 1991, Dr. Corley placed plaintiff on anti-inflammatory medication and an analgesic. She returned on September 25, 1991, with additional pain, but a bone scan returned with negative results. (Tr. 173). Dr. Corley also injected plaintiff with Xylocaine and Clestone.

Cherry Mathew, M.D., of Memorial Medical Center of East Texas prescribed aspirin to plaintiff, noting elevated blood sugar and "empty sella syndrome." Mild carpal tunnel syndrome had appeared in plaintiff's wrists. (Tr. 176).

### C. Plaintiff's Testimony Concerning Her Subjective Complaints

Plaintiff testified she experiences anxiety regularly. She "gets nervous" in crowds. She has generalized "shakiness" and she feels this has inhibited her ability to hold a job. (Tr. 63). She experienced bad headaches when she tried to work, which she attributed to her inability to understand the work. Plaintiff also described at length "falling out" and "sick spells," although the transcript does not detail exactly what these falls and spells entail. When she can't find something she wants in the grocery store, she gets disoriented or "drunk in the head."

Plaintiff testified that she experienced chest pains, "like somebody sticking a needle in it or a pin." This pain, caused by her angina, is alleviated by her nitroglycerine tablets, she said. (Tr. 51). The only medicinal side effect plaintiff states she experiences is dryness of the mouth. (Tr. 51). Her stomach hurts "a little bit" when she is nervous or upset. (Tr. 52).

Plaintiff's arm "stays numb" and hurts "all the time." She cannot grip items with her right hand.

No vocational or medical expert testified at plaintiff's hearing.

### III. The Secretary's Decision

#### A. Sequential Evaluation Process

The Secretary's regulations require a five-step sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520 (1986). *First:* Is the plaintiff currently engaging in substantial gainful activity? (If so, a finding of nondisability is required to be made and the inquiry ends.) *Second:* Does the plaintiff have a severe impairment or combination of impairments? (If not, a finding of nondisability is required and the inquiry ends.) *Third:* Does the severe impairment meet or equal those in the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1986)? (If so, disability is presumed and benefits are awarded.) *Fourth:* Does the impairment prevent the performance of the plaintiff's regular previous employment? (If it does, then a *prima facie* case of disability is established and the burden of going forward with the evidence shifts to the Secretary.) *Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir.1987). *Fifth:* Is there work in the national economy which the plaintiff can perform? (If the Secretary shows that the plaintiff can perform alternative employment, the burden then shifts back to the claimant to show he or she cannot perform the alternative labor. *Id.; Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986)).

#### B. The Administrative Law Judge's Decision

After considering the evidence of record, the ALJ concluded at the fifth sequential

---

1. A conversion mechanism or disorder is an alternation or loss of physical functioning, psychological in origin. Diagnostic and Statistical Manual of Mental Disorders at 257.

step that plaintiff was not disabled, i.e., she was capable of performing work in the national economy. The ALJ's findings were:

STEP 1: The claimant has not engaged in substantial gainful activity since June 3, 1981. (Finding No. 1, Tr. 33).

STEP 2: The medical evidence establishes plaintiff has severe hypertension, arteriosclerotic heart disease, angina pectoris, a history of a gastric ulcer, and mild carpal tunnel syndrome. (Finding No. 2, Tr. 33).

STEP 3: The claimant does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. Her generalized anxiety disorder is non-severe and does not interfere with her ability to work. (Finding Nos. 2, 3, Tr. 33).

STEP 4: The claimant is unable to perform her past relevant job as a maid. (Finding No. 6, Tr. 34).

STEP 5: The claimant has the residual functional capacity to perform a full range of light work.[2] (Finding No. 7, Tr. 34).

## IV. *Discussion*

### A. *General Rules for Decision*

#### (1) *Prima Facie* Case

■ Plaintiff has the burden of establishing disability by a preponderance of the evidence. Once plaintiff establishes a *prima facie* case by showing an inability to perform relevant previous employment, the burden shifts to the Secretary to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy.

■ To rebut a *prima facie* case, the Secretary must come forward with particu-larized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. Alternatively, in certain instances the Secretary is entitled to rely on the medical-vocational guidelines (the "grids") to rebut plaintiff's *prima facie* case of disability. 20 C.F.R. Subpart P, Appendix 2 (1986).

#### (2) **Mental Disorders**

■ The evaluation of disability on the basis of mental disorders requires the documentation of a medically determinable impairment, as well as consideration of the degree of limitation such impairment may impose on the individual's ability to work and whether these limitations have lasted or are expected to last for a continuous period of at least twelve months. The listings for mental disorders are arranged in eight diagnostic categories: organic mental disorders (12.02); schizophrenic, paranoid and other psychotic disorders (12.03); affective disorders (12.04); mental retardation and autism (12.05); anxiety related disorders (12.06); somatoform disorders (12.07); personally disorders (12.08); and substance addiction disorders (12.09). Each diagnostic group, except listings 12.05 and 12.09, consists of a set of clinical findings (paragraph A criteria), one or more of which must be met, and which, if met, lead to a test of functional restrictions (paragraph B criteria), two or three of which must also be met. There are additional considerations (paragraph C criteria) in listings 12.03 and 12.06, discussed therein.

The purpose of including the criteria in paragraph A of the listings for mental disorders is to medically substantiate the presence of a mental disorder. Specific signs and symptoms under any of the listings 12.02 through 12.09 cannot be considered in isolation from the description of the mental

---

**2.** Light work is defined as:

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg con-trols. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567 and 416.967.

disorder contained at the beginning of each listing category. Impairments should be analyzed or reviewed under the mental category which is supported by the individual's clinical findings.

The purpose of including the criteria in paragraphs B and C of the listings for mental disorders is to describe those functional limitations associated with mental disorders which are incompatible with the ability to work. The restrictions listed in paragraphs B and C must be the result of the mental disorder which is manifested by the clinical findings outlined in paragraph A. The criteria included in paragraphs B and C of the listings for mental disorders have been chosen because they represent functional areas deemed essential to work. An individual who is severely limited in these areas as the result of an impairment identified in paragraph A is presumed to be unable to work.

The listings for mental disorders are so constructed that an individual meeting or equaling the criteria could not reasonably be expected to engage in gainful work activity.

 Individuals who have an impairment with a level of severity which does not meet the criteria of the listings for mental disorders may or may not have the residual functional capacity ("RFC") which would enable them to engage in substantial gainful work activity. The determination of mental RFC is crucial to the evaluation of an individual's capacity to engage in substantial gainful work activity when the criteria of the listings for mental disorders are not met or equaled but the impairment is nevertheless severe. In this case, the ALJ found any mental impairments were non-severe.

 RFC may be defined as a multidimensional description of the work-related abilities which an individual retains in spite of medical impairments. RFC complements the criteria in paragraphs B and C of the listings for mental disorders by requiring consideration of an expanded list of work-related capacities which may be impaired by mental disorder when the impairment is severe but does not meet or equal a listed mental disorder.

## B. Application of the Rules to This Case

Plaintiff disputes the ALJ's decision and advances the following points of error:

1. The Secretary erred in finding plaintiff's mental impairments are non-severe.

2. The Secretary erred in failing to rule plaintiff's mental impairments meet the listing for "Anxiety–Related Disorders."

3. The Secretary erred in the evaluation of plaintiff's residual functional capacity.

### a. The Secretary did not err by classifying plaintiff's mental impairments as non-severe.

The record reflects that while plaintiff's mental impairment has had some effect on plaintiff's lifestyle, it has not been so debilitating as to preclude gainful activity.

Plaintiff challenges the ALJ by arguing there is no evidence to support the finding that she "cleans house, goes grocery shopping, prepares meals and maintains a residence." (Tr. 27). Plaintiff testified that she does all these things, with some limitations and assistance from her daughter. See Tr. 53 ("[S]he pushes the buggy and I go along with her, showing her what to get ..."); Tr. 64 ("Well, if I can't find what I want [when I go shopping], I get a little nervous."); Tr. 71 ("So you can cook?" "I can cook ..."). However, her benefit application indicated she does some housework, and her impairment caused her to be "a little slow on it now." (Tr. 118). Additionally, Dr. Wilkerson noted "patient supervises her own house, sweeps but she complains that she gets very tired doing any of these." (Tr. 163). The most major limitations of physical activity reported by plaintiff were that she cannot drive and her daughter now does the housework.

With regard to her interaction with people, plaintiff related that she will get "shaky" (Tr. 63) or start to cry (Tr. 64), but has no problems with anyone other than employers and neighbors. (Tr. 64). She expressed that she gets angry at work, but did not relate that this caused verbal or physical confrontations, nor did it culminate in the loss of a job. Instead, she stated she had been released from a position in the garment industry be-

cause she had been unable to learn the job's requirements. (Tr. 67). Furthermore, Dr. Wilkerson indicated plaintiff felt she "has a few friends," and not the more negative "few friends," as plaintiff now characterizes his pronouncement. (Tr. 63).

■■■■ The ALJ could have correctly concluded these types of complaints and interferences with work or other activity were not severe, but rather a minor abnormality. *See Stone v. Heckler,* 752 F.2d 1099, 1101 (5th Cir.1985) (impairment can be considered non-severe if it is a slight abnormality that does not affect the ability to work). Dr. McLean, a treating physician, concurred in qualifying plaintiff's anxiety as non-debilitative. (Tr. 155). Because plaintiff has not experienced negative interpersonal effects from her illness in the workplace, other than anger, and has not manifested this emotion in a negative manner, the ALJ properly could conclude the mental impairment has, or will have, only a minimal effect on her ability to perform gainful employment.

■■■ Plaintiff has exhibited a conversion mechanism, as noted by Dr. Wilkerson. (Tr. 163). This has resulted in the limited use of her arm and shoulder. However, her physical impairments, whatever their origin, have not destroyed her ability to perform the tasks documented by the ALJ in the decision. Furthermore, her shoulder has been treated for pain on several occasions. The mere presence of psychologically-based physical impairment does not lead to an automatic finding of severity. In this case, plaintiff has an anxiety disorder, the conversion mechanism is merely one symptom of that disorder.

While plaintiff argues the ALJ improperly found her complaints of pain to be lacking in credibility, it is important to note that her pain from the mechanism, which Dr. Wilkerson noted could be controlled by appropriate medication, is not so debilitating as to warrant a finding of complete disability on this condition.

### b. The ALJ did not err in failing to rule that plaintiff's impairments did not meet the Listing for Anxiety–Related Disorders.

Because the ALJ properly concluded plaintiff's mental impairment was non-severe, her contention that the ALJ should have found her impairments meet the listing for Anxiety–Related Disorders need not be addressed.

### c. The Secretary did not err in evaluating plaintiff's residual functional capacity.

■■■ The ALJ found plaintiff does not possess nonexertional limitations.[3] Based on this finding, the ALJ determined her residual functional capacity by resorting to the vocational guidelines, instead of a vocational expert. (Tr. 33–34, Finding 5, 11). If plaintiff suffers from a nonexertional impairment that restricts performance of a full range of work at the appropriate residual functional capacity level, the grids are inapplicable, and the Secretary must rely on other evidence to carry her burden. 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e) (1986); *Dellolio v. Heckler,* 705 F.2d 123, 127 (5th Cir. 1983).

The plaintiff argues the ALJ erred when it was determined plaintiff did not possess nonexertional limitations and was capable of performing the full range of light work.

■■■ The ALJ did not ignore plaintiff's mental illness in his findings, as argued by plaintiff. *See* Tr. 35–37. Instead, the ALJ noted plaintiff had not demonstrated inhibited interactions with employers or other employees due to any mental illness. This conclusion is supported by substantial evidence. No medical, or psychological, evidence supports the contention that plaintiff has lost the use of her arm, or would be precluded by pain from any light work activity, or otherwise would be unable to function in a work environment due to mental anxiety. Nor has plaintiff exhibited negative interactions with employers or other employees due to mental

---

**3.** Nonexertional impairments restrict performance of a full range of work at the appropriate residual functional capacity level. They includes mental, sensory, and skin impairments, as well as environmental restrictions. 20 C.F.R. Subpart P, Appendix 2, § 200.00(e).

limitations.[4] Additionally, Dr. Wilkerson noted plaintiff's thought patterns were uniformly good and her disorder could be treated with anxietyoletic medications. (Tr. 163). The full range of light work therefore is available to plaintiff and the ALJ was within his discretion in finding plaintiff does not possess nonexertional impairments.

### Recommendation

The Secretary's decision should be affirmed.

### Objections

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained within this report within ten days after service shall bar an aggrieved party from de novo review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn,* 474 U.S. 140, 148, 106 S.Ct. 466, 471, 88 L.Ed.2d 435 (1985); *Rodriguez v. Bowen,* 857 F.2d 275, 276–277 (5th Cir.1988).

May 22, 1995.

---

**4.** Despite the disparities between the ALJ's assessment and that of the reviewing physician, it is not mandatory that the ALJ accept the reviewing physician's findings in all respects, if the testimony and evidence show otherwise. In fact, the ALJ may complete the functional assessment without the aid of a physician. 20 C.F.R. § 416.920a(d).