IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-40337
_____


ROBERT FELLOWS,

Plaintiff-Appellant,


versus


KENNETH S. APFEL, Commissioner of
Social Security Administration,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Texas
(C-97-CV-262)
_____
March 8, 2000

Before JOLLY and DENNIS, Circuit Judges, and DAVID D. DOWD,[*]
District Judge.

PER CURIAM:[**]

Robert Fellows has applied for disability benefits and supplemental security income benefits. The Social Security Administration administrative law judge ("ALJ") denied benefits, and both the administrative appeals council and the district court affirmed. We affirm.

I

_____

[*]District Judge of the Northern District of Ohio, sitting by designation.

Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On September 30, 1994, Mr. Fellows, then 35, was hit by a car. After the amputation of one leg below the knee and of his pinky finger, the hospital discharged Mr. Fellows on October 4. The medical records noted that he was progressing "nicely," and that "[a]fter [the prosthesis] fitting . . . it is expected that this patient will be able to ambulate completely independently without [an] assistive device." The report concluded that "[t]he patient is completely independent in all areas of activities of daily living." On October 11, 1994, Mr. Fellows told the examining doctor that his appetite, energy level, and sleep patterns were normal. Despite this, Mr. Fellows filed for disability benefits under 42 U.S.C. §§ 416(i), 423, and 1382 on November 11, 1994.

After another visit to the doctor, a new report on December 12 stated that Mr. Fellows was "ambulating with and without a cane with a temporary prosthesis," and that he would be re-evaluated in a year for a permanent one. On February 3, 1995, Mr. Fellows told the doctor that he was still able to enjoy lifting weights and raising his dogs. On February 14, he was fitted for a permanent prosthesis. On February 28, Mr. Fellows reported to the doctor that his back was doing well. After that, he stopped going to the doctor.

In January 1996, there was a hearing on whether Mr. Fellows could obtain disability benefits. Both Mr. Fellows and a vocational expert testified at the hearing. Afterwards, the ALJ denied Mr. Fellows's application for benefits, concluding that

there was a significant number of jobs that Mr. Fellows could perform. Mr. Fellows appealed to the Appeals Council, which affirmed the ALJ's decision.

Mr. Fellows then sought judicial review in district court. The magistrate judge recommended that the ALJ's decision be affirmed, and the district court adopted that recommendation. Mr. Fellows then filed a motion for a new trial, which was denied. Finally, he filed a notice of appeal and a motion to proceed in forma pauperis on appeal. The district court granted his in forma pauperis request.

## II

This court reviews ALJ decisions to deny benefits by determining whether the ALJ applied the correct legal standards, and whether the decision is supported by substantial evidence. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994). Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1976), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). If supported by substantial evidence, the Secretary's findings are conclusive. Id. at 390; 42 U.S.C. § 405(g).

## III

### A

At the hearing, Mr. Fellows argued that excessive pain in his back, amputated leg, and head rendered him disabled.  The ALJ, however, found that his alleged pain did not constitute a disability.  On appeal, Mr. Fellows argues that the ALJ improperly relied on Mr. Fellows's demeanor at the hearing and failed to consider Mr. Fellows's inability to afford prescription medication in reaching its conclusion.[1]  We disagree.

The relevant statute defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In evaluating a disability claim, the Secretary follows a five-step sequential process.  The burden of establishing the first four elements is on the claimant.  First, the claimant must not be presently working.  20 C.F.R. § 404.1520(b).  Second, the claimant must establish an "impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities."  Id. at § 404.1520(c).  If the claimant satisfies both of these requirements, the third step consists of establishing that

---

[1]Mr. Fellows also appears to argue that the ALJ's determination with respect to his residual functional capacity to obtain alternative employment was faulty because the court improperly relied on its findings with respect to his poverty and continuing pain.  Because we hold that those findings were proper, reliance on them was as well, and was simply part of the five-step sequential evaluation process.

the impairment falls within the definition of one of the enumerated impairments in the appendix to the regulations.  Id. at § 404.1520(d).  If the claimant satisfies this third criterion, then he or she is disabled per se, without regard to vocational factors.  If he or she fails to establish the third step, however, vocational factors are considered during the fourth step.  At that stage, the claimant must establish that the impairment prevents him or her from doing the same work he or she did in the past.  Id. at § 404.1520(e).  At that point, at the fifth step, the burden shifts to the Secretary to prove that the claimant can perform relevant work.  If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested.  Id. at § 404.1520(f);  see also Fraga, 810 F.2d at 1301-02.

B

Mr. Fellows fails to surmount the second step of this test, establishing a satisfactory impairment.  With respect to pain, an ALJ must consider subjective complaints; however, it is within the ALJ's discretion to determine the debilitating effect of such symptoms.  Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987).  The ALJ is not required to credit subjective evidence, such as the claimant's testimony, over conflicting medical evidence.  Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992).  In addition, the ALJ may consider the claimant's demeanor during the hearing, among other factors, in evaluating the claimant's credibility.  Villa, 895 F.2d 1024.

At the hearing, Mr. Fellows stated that his amputation caused him pain at a severity level of "eight" on a scale of "one-to-ten"; that the pain intensity during the hearing was "seven"; and that periodic headaches reached "ten."

As the ALJ noted, this testimony did not correspond with Mr. Fellows's medical reports. The last of these was from February 1995. It stated that Mr. Fellows had mentioned pain in his amputated leg, but that his back was doing well. Earlier medical reports indicated that Mr. Fellows had experienced pain, but that the pain was not severe. None of the reports mentioned a prescription for pain medication.

In addition, the ALJ found Mr. Fellows's demeanor at the hearing consistent with the level of pain Mr. Fellows claimed to suffer: "[he] appeared to be very comfortable at the hearing, and in no pain whatsoever, though he did limp a little when entering and leaving the hearing room."

Based on the record before us, we conclude that there is substantial evidence supporting the ALJ's determination that Mr. Fellows did not suffer from a disability due to pain. We reach this conclusion, as the ALJ did, based on Mr. Fellows's medical records in addition to his demeanor during the hearing.

Mr. Fellows also argues that the ALJ did not properly consider Mr. Fellows's inability to afford pain medication in determining that he was not impaired. It is true that if a claimant cannot afford the prescribed treatment or medicine, a curable, temporary

6

disability is treated as a permanent one.  <u>Lovelace v. Bowen</u>, 813 F.2d 55, 58 (5th Cir. 1987).  But that presumes the existence of a disabling condition.  In this case, the ALJ properly found none, so Mr. Fellows's inability to afford prescription medicine is irrelevant.  See <u>Villa v. Sullivan</u>, 895 F.2d 1019, 1024 (5th Cir. 1990)(holding that the fact that a claimant cannot afford treatment for a condition that is not disabling is inconsequential).  Even if the ALJ had found Mr. Fellows disabled due to excessive pain, there is nothing on the record suggesting that Mr. Fellows ever obtained any prescription, much less that it was too expensive for him to afford.

We conclude, therefore, that Mr. Fellows cannot meet the second step required for establishing a valid claim.  Thus, this claim must fail.[2]

IV

Mr. Fellows also contends that the hypothetical posed to the vocational expert during the hearing was incomplete because it did not mention Mr. Fellows's headaches and loss of sleep.  Thus, the vocational expert's conclusion about Mr. Fellows's ability to find alternate employment did not account for those factors.[3]

---

[2]Because Mr. Fellows's claim fails at the second step, we need not address his arguments with respect to the third step, whether he has a disability that qualifies under listing 1.10C(3) of 20 C.F.R. Pt. 404, Subpt. P. Appendix 1.

[3]Mr. Apfel responds by arguing that Mr. Fellows failed to raise this issue before the magistrate judge.  We conclude that he did so adequately in his summary judgment brief by asserting that

Again, we disagree. The ALJ concluded that the headaches were not severe, and we have already affirmed that finding. There was, therefore, no reason to pose that question to the vocational expert. And even if the hypothetical had been incomplete, Mr. Fellows's lawyer specifically asked the vocational expert about the effect headaches would have on Mr. Fellows's vocational options. Thus, the issue was before the ALJ.

V

For the reasons stated herein, the district court is

A F F I R M E D.

---

the ALJ had omitted from the hypothetical "any impairment of concentration due to pain." Mr. Fellows's list of symptoms causing "unremitting pain" resulting in an impairment to his concentration included headaches.