**Rose M. MYERS, Plaintiff,**

v.

**Jo Anne B. BARNHART,[1] Commissioner of the Social Security Administration, Defendant.**

**Civ.A. No. H–01–2721.**

United States District Court,
S.D. Texas,
Houston Division.

Nov. 27, 2002.

1. Jo Anne B. Barnhart was appointed Commissioner of the Social Security Administration effective November 9, 2001 and, ac-

cordingly, is named as the defendant in this matter.

Timothy N. Derigo, Attorney at Law, Midland, TX, John Joseph Ingram, III, Ingram Law Firm, McAllen, TX, for plaintiff.

Kerry J. Simpson, U.S. Attorney's Office, Special Assistant U.S. Attorney, Dallas, TX, for defendant.

### MEMORANDUM AND ORDER

ATLAS, District Judge.

This Social Security Act appeal was referred to Magistrate Judge Calvin Botley pursuant to 28 U.S.C. §§ 636(b)(1)(B). On November 5, 2002, Magistrate Judge Calvin Botley issued a Memorandum and Rec-

ommendation [Doc. # 20], suggesting that this Court grant Defendant's Motion for Summary Judgment [Docs. # 16; see Doc. # 17 (Memorandum in Support)], and deny Plaintiff's Motion for Summary Judgment [Doc. # 15]. The time for objections to be filed by the parties as to the Memorandum and Recommendation has expired without any objections having been filed.[2] The parties have provided no basis to revisit the findings and conclusions proposed in the Magistrate Judge's Memorandum and Recommendation, and that the Magistrate Judge's recommended dispositions will be adopted.[3] This Court cannot conclude, in light of the record presented, that the decision of the Administrative Law Judge ("ALJ") that Plaintiff could perform unskilled, light work with limitations is supported by substantial evidence unsupported by substantial evidence, as that term is defined by federal law. There clearly is more than a scintilla of evidence to support the administrative decision in light of the ALJ's credibility findings, the evidence of Plaintiff's degree of pain, the absence of any evidence of deterioration or decompensation in work-like settings, the lack of objective medical evidence of pain or effects of the claimed fibromyalgia, and the role of the ALJ to resolve conflicts in the evidence, particularly with reference to Plaintiff's claimed inability to perform work for eight hours per day, five days per week. It is therefore

ORDERED that the **Memorandum and Recommendation** [Doc. # 20] is **adopted** as this Court's Memorandum and Order. It is further

ORDERED that Defendant's Motion for Summary Judgment [Doc. # 16] is **GRANTED**. It is further

---

**2.** The Supplemental Memorandum and Recommendations was entered on the docket of the Court on May 24, 2002, and copies were served on the parties that day. The time for

objections expired ten business days later, see 28 U.S.C. § 636(b)(1).

**3.** Since there are no objections, the Court has not made a de novo review of this matter.

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 15] is **DENIED.** It is further

**ORDERED** that this case is **DISMISSED with prejudice.**

A final judgment will be entered separately.

## MEMORANDUM AND RECOMMENDATIONS

Plaintiff Rose Myers ("Myers") seeks judicial review of the Social Security Administration's ("SSA") denial of her claim for disability and supplemental security income benefits provided by Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 405 and 1381, *et seq.* *See* Plaintiff's Motion to Reverse or Remand (Entry # 15). Defendant Jo Anne B. Barnhart, Commissioner of the Social Security Administration ("Commissioner"), urges her decision denying Myers' claim for benefits be upheld and maintains that although Myers is limited to performing unskilled, light work with limitations, she is not disabled and is able to work at jobs found to exist in significant numbers in the national economy. *See* Defendant's Motion for Summary Judgment (Entry # 16) and Memorandum in Support (Entry # 17).[1] Myers contends that the administrative law judge ("ALJ") wrongfully determined that she is not disabled as a consequence of failing to properly evaluate and consider the combined impact of her alleged impairments, particularly her pain and fibromyalgia; improperly relying upon the medical expert's response to a hypothetical question that failed to include all of her alleged impairments; and, failing to assess wheth-

er Myers would be able to maintain work on a regular basis. *See* Plaintiff's Motion to Reverse or Remand (Entry # 15). Myers maintains that the Commissioner's decision should be reversed or remanded, contending that it is not premised upon substantial evidence and does not comply with applicable legal standards.

Conversely, the Commissioner contends that her finding that Myers is not disabled, is based upon a complete review of the claimant's medical records as well as the opinions of her treating physicians and those of the vocational and consulting medical experts and, accordingly, the Commissioner's reaffirmation of the ALJ's decision that Myers is not disabled, as she retains the residual functional capacity to perform unskilled, light work with restrictions, is based upon substantial evidence and the proper application of the relevant legal standards. *See* Defendant's Motion for Summary Judgment (Entry # 16). The Commissioner disputes Myers' claims and contends that affirming the denial of the claim for disability and supplemental security income benefits is the only proper conclusion to this matter.

For the reasons discussed below, it is recommended that the ALJ's findings be affirmed.

## THE EVIDENTIARY RECORD

### A. *Age, Education & Work Experience*

Rose Myers is a forty-seven (47) year old, divorced female with no minor children. Myers earned a high school education by obtaining a GED and has past work experience as a clerical worker and school bus driver. (T.33–34, 39; R. 87–89, 99, 257–259).[2] Myers ceased working

---

1. Defendant's Motion for Summary Judgment (Entry # 16) and Memorandum in Support (Entry # 17) will henceforth be referred to as the single instrument, Defendant's Motion for Summary Judgment (Entry # 16).

2. References made to statements taken from that portion of the administrative record identified as the "transcript" of the administrative hearing are designated "T," followed by the applicable page number(s) of the record; and,

on February 18, 1998, as a result of pain and depression caused by her alleged rheumatoid arthritis, osteoporosis, psoriasis, borderline lupus, diabetes, lung damage resulting from Legionnaire's Disease and fibromyalgia. (R. 125–136; T. 33–39).

## B. The Medical Evidence

Rose Myers presented to Dr. Judson Henderson on February 28, 1998, with complaints that she had hurt her back while trying to help a friend move. Myers reported a past history of having undergone surgery for a tubal pregnancy and is allergic to codeine. She was prescribed Robaxin for the lumbo-sacral pain and, after obtaining pap examination results, Flagyl for a coccobacilli vaginal infection. Radiological scans of the lumbo-sacral spine revealed her vertebral bodies in good alignment with no evidence of a fracture but narrowing of the lumbo-sacral interspace with associated sclerotic degenerative disc disease. No evidence of spondylolysis was presented. (R. 245–252). Myers appeared in the emergency room of Northeast Medical Center Hospital on June 16, 1998, complaining of fever, chills and coughing up blood. She related that she pulled a muscle in her neck, shoulder and upper chest on the left side and had a congested cough producing a blood-tinged sputum. Myers reported a history of smoking one pack of cigarettes per day, having had tuberculosis as a child, requiring two years of treatment. Following an examination by Dr. David Carlyle, Myers was admitted to the hospital, under the care of Dr. Stephen Isbell, in moderate respiratory distress with a possible diagnosis of bilateral Klebsiella pneumonia. A chest x-ray revealed bibasilar densities consistent with pneumonia and a urine sample tested positive for the Legionella antigen due to pneumonia. (R. 153–179). Following her discharge from the hospital, Myers appeared at the International Family Medical Center for a follow-up examination on July 3, 1998. She indicated that she was taking Paxil for depression because she was having trouble with her estranged husband and her on-going relationship with a younger man. Dr. Briner gave Myers a prescription for Bactrim for her continued cough and congestion and a Disability Certificate indicating that Myers would be unable to return to work for two months. A pap examination and mammogram performed at Northeast Medical Center Hospital on September 3, 1998, were both negative with no evidence of malignancy. (R. 183–201).

On March 1, 1999, Myers appeared at the International Family Medical Center with complaints of arthritis in her knees, pain in her hips and depression. Myers was referred to Dr. Celeste Thomas for examination. (R. 181). On April 26, 1999, Myers was examined by Dr. Thomas who noted that she complained of swelling pain in her knees and hips since she was twenty-one (21) years of age and that six of her eleven siblings had arthritis. Myers further related that she could hardly walk during a nine month period and following several episodes of recurring pain, had been told she had rheumatoid arthritis. Myers indicated that she also had low back pain as a result of degenerative disc disease and that she had pain at all times of the day. She was prescribed Flexeril, Celebrex and Elavil after Dr. Thomas determined that she had tender points consistent with fibromyalgia and osteoarthritis of the knees. (R. 229–234). Psychiatrist, Dr. Nilgun Giray–Bellezza, of the University of Texas

references made to items contained in the remainder of the record are designated "R," followed by the applicable page number(s).

Health Science Center, examined her on May 20, 1999, and diagnosed her as having a moderately severe major recurrent depressive disorder with chronic anxiety and a negative prognosis due to her failure to obtain psychiatric treatment and medication. Further, Dr. Giray–Bellezza determined that Myers had poor concentration and an impaired ability to cope with stress. (R. 223–234). At the request of the Texas Rehabilitation Commission ("TRC"), Dr. Donald Gibson,II, an internalist, examined Myers on June 21, 1999, noting her complaints of arthritis. Dr. Gibson's examination revealed that Myers appeared to have a combination of osteoarthritis and fibromyalgia with some soft tissue and joint pain. Myers revealed no severe immobility, was able to bend, squat poorly, and climb off and on the exam and x-ray table without difficulty. She had no gait or motor disorder and no reproducible fatigue. There was no evidence of swelling or deformity and her ability to sit, stand and walk for brief periods was not impaired. There was no evidence of radiculopathy, lower spinal disorder or neuropathy and her osteoposoris was mild with no history of pathologic fractures.(R. 235–239). On July 7, 1999, Dr. Grethe E. Wilk, an osteopath, completed a Physical Residual Functional Capacity Assessment at the request of the TRC, noting Dr. Gibson's finding that Myers' gait and coordination were normal with no muscular weakness or atrophy despite her complaints of limitations due to arthritis. Further, Dr. Wilk determined that Myers had full range of motion with no warmth, effusion or deformity with normal grip strength. X-rays of the lumbar spine showed very mild degenerative changes and scans of the knees revealed very minimal degenerative changes. Myers was able to frequently lift 25 lbs., occasionally lift 50 lbs, stand, sit or walk 6 hrs. per day with an unlimited ability to push and/or pull.

Myers had no postural, manipulative, visual, communicative or environmental limitations and her allegations of physical limitations were not supported by the medical records. (R. 202–208). Psychiatrist, Dr. A. Boulas, completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment for the TRC on July 7, 1999, determining that Myers was depressed but had no history of psychiatric treatment or hospitalizations and was taking Paxil, on and off. Dr. Boulas assessed Myers' insight as fair, judgment as fair to good and determined that although she had some limitations due to her depression, the medical records do not support her allegations of totally disabling mental impairments, as she retained the ability to understand, remember, carry out simple instructions, use reasonable judgment, respond appropriately to supervisors and co-workers and respond appropriately to changes in a routine work setting. (R. 210–222). On November 8, 1999, psychiatrist Dr. Vikra Mehra. examined Myers, at her request, and determined that she was coherent, logical, goal directed with some rambling, with no loose associations or flight of ideas. Myers had intact insight and judgment with no auditory or visual hallucinations, paranoia or suicidal/homicidal ideation. Dr. Mehra diagnosed Myers with a chronic pain disorder having physical and psychological features with a poor prognosis due to her physical limitations caused by her osteoporosis, arthritis, fibromyalgia and chronic pain. (R. 240–243).

## C. The Procedural Background—The Administrative Proceedings and Exhaustion of Administrative Remedies

Myers protectively filed an application with the Social Security Administration on March 30, 1999, seeking disability and supplemental security income benefits, due to

her inability to work as a consequence of her alleged active rheumatoid arthritis, depression, osteoarthritis, psoriasis, borderline lupus, diabetes, lung damage due to Legionnaire's disease and fibromyalgia. (R. 125–136, 87–89, 257–259; T. 33–34). Following the agency's denial of her claim for benefits, an administrative hearing was held July 12, 2000, at which Myers was represented by a non-attorney representative. (T. 30–53). The administrative law judge, on August 14, 2000, denied Myers' request for benefits after finding that she was not disabled and was capable of performing unskilled, light work with limitations. (R. 19–20). Following Myers' appeal of the denial of her claim, the Appeals Council affirmed the ALJ's decision on June 8, 2001 (R. 5–6), thereby, resulting in the ALJ's decision becoming a final decision of the Commissioner. Myers has, therefore, exhausted all administrative remedies prior to seeking judicial review and, accordingly, the Court has the proper authority, conferred statutorily, with which to commence its review.[3] See *Sims v. Apfel,* 530 U.S. 103, 107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000); *Weinberger v. Salfi,* 422 U.S. 749, 757, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Jackson v. Apfel,* 234 F.3d 246 (5th Cir.2000); *McQueen v. Apfel,* 168 F.3d 152, 155 (5th Cir.1999); *see also* 42 U.S.C. § 405(g); 28 U.S.C § 1383(c)(3) and 20 C.F.R. § 404.981 and/or 20 C.F.R. § 416 (1999), *as applicable.*

## STANDARDS OF REVIEW

### The Motion for Summary Judgment

The standards under which a summary judgment is to be considered are well established. Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is, there-

fore, entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), quoting *Fed.R.Civ.P. 56(c)* ; see also *Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir.1999); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998); *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir.1993). The moving party bears the burden of showing that there is an absence of evidence to support the nonmovant's case. *Id.* A factual dispute is "genuine" when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also *PYCA Industries, Inc. v. Harrison County Waste Water Management District,* 177 F.3d 351, 361 (5th Cir. 1999); *Crowe v. Henry,* 115 F.3d 294, 296 (5th Cir.1997). The substantive law dictates which facts are "material." See *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir.), *cert. denied,* 528 U.S. 906, 120 S.Ct. 249, 145 L.Ed.2d 209 (1999); *Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187, 189 (5th Cir.1991). An issue is material if its resolution could affect the outcome of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505. Facts may be gleaned from reviewing the pleadings, answers to interrogatories, admissions and affidavits on file. See *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)(*en banc*). In deciding whether a fact issue has been created, all justifiable inferences, must be viewed in the light most favorable to the nonmoving party, and questions of law are reviewed *de novo.* See *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Merritt–Campbell, Inc. v. RxP Prods., Inc.,* 164 F.3d 957, 961 (5th Cir. 1999); *Horton v. City of Houston,* 179

---

**3.** This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. section 636(b)(1)(A), the Cost and Delay Reduction Plan under the Civil Justice Reform Act and Rule 72, Fed.R.Civ.P. *See* Order of Referral (Entry # 2).

F.3d 188, 191 (5th Cir.1999). If the summary judgment motion is properly supported, however, the burden shifts from the movant to the adverse party, who may not rest on mere allegations or denials, but must set forth specific and supported material facts, of significant probative value, establishing that there exists a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *International Association of Machinists and Aerospace Workers v. Compania Mexicana de Aviacion, S.A. de C.V.,* 199 F.3d 796, 798 (5th Cir.2000); *Union Planters National Leasing, Inc. v. Woods,* 687 F.2d 117, 119 (5th Cir.1982).

### The Administrative Determination

■ A review of the Commissioner's decision to deny disability benefits compels a determination of whether the substantial evidence in the record, reviewed as a whole, supports the decision, and further, whether proper legal standards were used in evaluating the evidence. *Loza v. Apfel,* 219 F.3d 378, 389 (5th Cir.2000); *Estate of Morris v. Shalala,* 207 F.3d 744, 745 (5th Cir.2000); *Crowley v. Apfel,* 197 F.3d 194, 197 (5th Cir.1999); *Jones v. Apfel,* 174 F.3d 692, 693 (5th Cir.1999). The standard for judicial review is the same for both claims for disability insurance and supplemental security income benefits. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means that which is more than a mere *scintilla* but less than a preponderance; and, it is evidence of such relevance that a reasonable mind would accept it as adequate to support the conclusion reached. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Brown v. Apfel,* 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater,* 64 F.3d 172, 173 (5th Cir.1995). The elements of proof to be weighed in determining whether substantial evidence exists, include the (1) objective medical facts; (2) diagnoses and opinions of treating and ex-

aming physicians; (3) claimant's subjective evidence of pain; (4) claimant's educational background, age, and work history. *Owens v. Heckler,* 770 F.2d 1276, 1279 (5th Cir.1985). The Court is not, however, allowed to reweigh the evidence, retry the facts *de novo,* or substitute its judgment for that of the Commissioner. *Id.;* see also *Watson v. Barnhart,* 288 F.3d 212, 215 (5th Cir.2002); and, any finding that there is no substantial evidence to support the Commissioner's determination is appropriate only if no credible evidentiary choices or medical findings exist to support the decision, *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir.2000); *Kinash v. Callahan,* 129 F.3d at 738; *Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir.1995), thereby, compelling a "[j]udicial review [that is] deferential without being so obsequious as to be meaningless." *Brown v. Apfel,* 192 F.3d at 496; see also *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986).

### Determining the Existence of Eligibility for Benefits

The standard is the same for the judicial review of both Social Security disability insurance and supplemental income cases. See *42 U.S.C. § 405(g), 1383(c)(3).* To qualify for disability insurance benefits, the claimant must meet certain insured status requirements, be under age sixty-five (65), file an application for such benefits, and be under a disability as defined by the Social Security Act. *42 U.S.C. §§ 416(i), 423.* Those claiming disability insurance benefits under the Social Security Act have the burden of proving their disability. *Demandre v. Califano,* 591 F.2d 1088 (5th Cir.1979).

"Disability" is a legal status that is determined by the ALJ after evaluating expert medical and vocational findings. The ALJ's determination, however, must conform to the legal standards established

and be supported by substantial evidence. See *Richardson v. Perales,* 402 U.S. at 401, 91 S.Ct. 1420; *Loza v. Apfel,* 219 F.3d at 389. The inquiry necessarily becomes whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ. See *id.* An impairment cannot be assessed as less than severe and accordingly, not disabling, unless it constitutes a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the claimant's ability work, irrespective of age, education or work experience. See *Stone v. Heckler,* 752 F.2d 1099 (5th Cir.1985). It remains, however, the claimant's burden to establish the disability. See *Anthony v. Sullivan,* 954 F.2d 289, 295 (5th Cir.1992); see also *42 U.S.C. §§ 416, 423.*

To determine the existence of an eligible disability there must, initially, be an evaluation of whether the claimant was unable to perform substantial gainful work existing in the national economy because of a medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted, or which can be expected to last, for a continuous period of not less than twelve (12) consecutive months. 42 U.S.C. §§ 416(1), 423(d)(1)(a), 1614(a)(3)(A); *Barnhart v. Walton,* 535 U.S. 212, 222–25, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002); *McQueen v. Apfel,* 168 F.3d at 154; *Greenspan v. Shalala,* 38 F.3d 232, 236, *cert. denied,* 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (5th Cir.1995).

A five-step sequential process is utilized by the ALJ to determine whether a claimant qualifies for disability benefits. See *20 C.F.R. § 404.1520(b)–(f)(1998); Loza v. Apfel,* 219 F.3d at 390; *Leggett v. Chater,* 67 F.3d at 563. The claimant has the burden of establishing the first four steps of the five-step sequential process by establishing a severe impairment which pre-vents the claimant from performing past relevant work. In this five-step process, the ALJ considers:

1) whether the claimant is currently engaged in substantial gainful activity, as an individual who is working and engaging in substantial gainful activity will not be found disabled, regardless of the medical findings;

2) whether the claimant has a severe impairment;

3) whether the claimant meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, as such an individual will be considered disabled without consideration of vocational factors;

4) if an individual is capable of performing the work they did in the past, a finding of not disabled must be made; and,

5) if an individual's impairment precludes them from performing their past work, other factors, including age, education, past work experience and residual functional capacity must be considered to determine if there is any work in the national economy that the individual can perform.

*20 C.F.R. § 404.1520(b)–(f);* see also, *Carey v. Apfel,* 230 F.3d 131, 134–5 (5th Cir.2000); *Brown v. Apfel,* 192 F.3d at 498; *Leggett v. Chater,* 67 F.3d at 566.

The Commissioner bears the burden as to the fifth step of the process. See *Myers v. Apfel,* 238 F.3d 617, 619 (5th Cir.2001). If the Commissioner meets this burden, the claimant must then prove that he or she cannot, in fact, perform the alternate work suggested. See *Waters v. Barnhart,* 276 F.3d 716, 718 (5th Cir.2002); *Carey v. Apfel,* 230 F.3d at 135. If, at any step of the analyses, the ALJ finds that the claimant is or is not disabled, the inquiry is

terminated. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Myers v. Apfel*, 238 F.3d at 619.

## DISCUSSION

### I. The ALJ Did Not Improperly Fail to Evaluate and Consider the Combined Impact of the Claimant's Alleged Impairments

There is no dispute that Myers did not engage in substantial gainful activity during the relevant period in question, thereby, meeting the first step of the sequential process. (R. 22) The ALJ determined that Myers' rheumatoid arthritis, osteopososis, borderline lupus, diabetes and psoriasis were not severe; but, found that her fibromyaliga, lumbar spine degenerative disc disease, joint disease of the knees, depression and lung damage, resulting from Legionnaire's Disease, were severe impairments. (R. 14–15). At the third step of the process, however, the ALJ determined that none of Myers' alleged impairments were severe enough, either individually or in combination with the other, to constitute a disability. (R. 16–17). The ALJ's finding that Myers' impairments were severe, did not prevent a finding that she retained the residual functional capacity to perform reduced work related activities and, accordingly, is not disabled. See *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir.2001); see also *20 C.F.R. § 404.1520a(c)(2)*. Myers maintains, however, that the ALJ failed to evaluate the combined impact of her alleged severe impairments and, accordingly, failed to properly consider the combined effect these ailments would have on her ability to work. *See* Plaintiff's Motion to Reverse and Remand (Entry # 15) at p. 11.

In considering the severity of each of Myers' alleged impairments, the ALJ must determine if the impairment meets or exceeds the agency's criteria of listed disorders. *Id.* The ALJ, however, is also required to consider the combined effects of all the claimed impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity for a disability determination. *Loza v. Apfel*, 219 F.3d at 393 (5th Cir.2000); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir.1999); *see also* 20 C.F.R. § 404.1523. If the ALJ determines that the combination of a disability claimant's alleged ailments has a severe impact, the combined impact of the impairments is considered throughout the remainder of the disability determination process. *Loza v. Apfel*, 219 F.3d at 393; *20 C.F.R. § 404.1523*.

Myers does not contest the ALJ's finding of "non-severity," as to her alleged rheumatoid arthritis, osteoporosis, borderline lupus, diabetes and lupus. The record reflects that none of the non-severe impairments was confirmed by objective medical evidence. In relating her prior medical history, Myers would relate to medical personnel that the conditions had been previously diagnosed, but the claimant failed to evince any documentation substantiating the existence of the alleged impairments. *See* R. 15.

In urging, however, that the unfavorable administrative decision failed to assess the impact of her combined severe impairments, Myers specifically contends that the ALJ failed to consider the effect that her pain and fibromyalgia, in combination with her other impairments, had on her ability to work. *See* Motion to Reverse or Remand (Entry # 15). The ALJ determined that neither of Myers' severe impairments, fibromyalgia, lumbar spine degenerative disc disease, degenerative joint disease of the knees, pulmonary disease and depression, met or equalled the applicable impairment listed in the Social Security Regulations' Appendix 1, Subpart P,

Regulations No. 4 ("Listing of Impairments"). *Id.* The ALJ specifically found that section 1.05C of the Listing of Impairments was not met with respect to the Myers' back disorder as there were no apparent neurological deficits. No significant bony destruction or significant joint space narrowing was evident and, accordingly, failed to meet section 1.03 of the Listings. The Listing of Impairments' section 3.02 was not met because there was no medical evidence demonstrating significant pulmonary disease. *Id.* The ALJ further found that Myers' depression failed to meet or equal section 12.04 of the Listing of Impairments as there was no evidence of "deterioration or decompensation in work-like settings," as reflected in the ALJ's assessment of her mental condition on the Psychiatric Review Technique Form. *Id.* at 21–28.

## A. Myers' Alleged Severe Impairments of Fibromyalgia and Pain Were Not Disabling

### (1) Fibromyalgia

With respect to Myers' fibromyalgia, the ALJ determined that there was no impairment listing for that condition and noted that the medical expert ("ME") testified that the Listing criteria were not met. *Id.* Myers contends that the lack of such a listing should not have precluded a finding that Myers' had fibromyalgia, and urges that the existence of the disease is confirmed by the description of the condition in Merck Manual and a June 7, 2002 University of Michigan article, and a 1998 agency memo indicating the condition was medically determinable by, among other things, locating a patient's tender points. *See* Exhibits A, B, C and D of Plaintiff's Motion to Reverse or Remand (Entry # 15). It is clear, however, from the testimony of the medical expert, Dr. Stephen Goldstein, a board certified specialist in internal medicine and neurology, that although he found no impairment listing for fibromyalgia, Dr. Goldstein did not reject consideration of the condition. The ME analyzed the impairment in light of the criteria mandated by section 1.02 and determined that Myers' condition also failed to meet an equivalent listing at section 1.02 for inflammatory arthritis, because there was no evidence of muscle pain, weakness or significant restriction of the muscles and joints, consistent with fibromyalgia. *See* T. 47.

Both Drs. Celeste Thomas, Myers' treating physician, and Donald Gibson, the examining consultative physician, noted that Myers' complaints were consistent with fibromyalgia. (R. 229–234;235–239). Dr. Thomas' determination, however, that Myers had tender points that matched fibromyalgia symptoms, was not supported by the objective medical evidence. There was no objective medical source confirming the existence of such tender points. (R. 229–234). Further, the examination of the consulting internalist, Dr. Gibson, which was conducted only approximately three months following Dr. Thomas' exam, revealed that despite Myers' fibromyalgia, she evidenced only slight joint pain, with no severe immobility and no gait or motor disorder, or reproducible fatigue. (R. 235–239). Additionally, the findings of the consulting osteopath, Dr. Wilk, support Dr. Gibson's findings, as Dr. Wilk determined that Myers had a full range of motion and that her claims of physical limitations were not supported by the medical evidence. *See* R. 202–208. The ALJ's findings that Myers' claimed fibromyalgia was not severe enough to be considered disabling, either alone or in concert with her other impairments, was proper as it was substantiated by the testimony of the medical expert as well as the findings of the examining consulting physicians and was, therefore, supported by the substantial evi-

dence. As the evidence presented by Myers, with respect to the severity of her fibromyalgia, was controverted or remained unsubstantiated by medically accepted evidence, the ALJ's finding that Myers' fibromyalgia was not severe enough to be disabling, was proper. See *Myers v. Apfel,* 238 F.3d at 621.

### (2) Pain

■ Similarly, the ALJ's findings that Myers' pain was not disabling is equally supported by the record. A determination as to whether a disability benefits claimant is able to work despite some pain is within the ALJ's discretionary review and will be upheld if the finding is supported by substantial evidence. See *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir.2001); see also *Shave v. Apfel,* 238 F.3d 592, 595 (5th Cir.2001). Myers' consulting psychiatrist, Dr. Vikra Mehra, determined that she had a chronic pain disorder. (R. 240–243). Dr. Mehra, however, provided no objective medical data supporting her finding that Myers had chronic pain or identifying the source of her alleged pain, and no other physician diagnosed her as having disabling or chronic pain. Allegations of pain must be corroborated by objective medical evidence. *Chambliss v. Massanari, id.* The only medical determination of disability provided the claimant was in 1998, by Myers' treating physician, as a result of her pulmonary distress, not her pain. In that instance, Dr. Briner indicated that Myer's condition was merely temporary and not to exceed two months. (R. 183–201). Myers' testimony that pain medication made her life a little easier and that, despite her pain, she was still capable of attending to her personal needs, including, washing her own clothes, cooking light meals in a microwave and dressing herself (T. 36, 42–43); as well as her testimony that she was was not medically prescribed any assistive device for pain but chose to use a neighbor's cane on her own (T. 41),

also supported a finding that she was not suffering from disabling pain. The ALJ's findings, with respect to Myers' complaints of pain, reflected an understanding of her full regimen with respect to pain and is premised upon the substantial evidence and was, accordingly, proper.

### II. In Evaluating Myers' Physical Residual Functional Capacity, The ALJ's Reliance Upon the Medical Expert's Response to A Hypothetical Question That Did Not Include an Assessment as to Depression, Was Proper.

■ Myers contends that the medical expert's refusal to include an assessment of the claimant's mental condition, when responding to the ALJ's hypothetical question posed to elicit the physician's opinion as to Myers' ability to work, constituted error. *See* Plaintiff's Motion to Reverse and Remand (Entry # 15). It is the ALJ's responsibility, in those instances in which there is a finding of severe impairment that preclude the claimant from performing past revelant work, to evaluate the claimant's capacity to perform a reduced range of work. See *Boyd v. Apfel,* 239 F.3d at 706; *Sims v. Apfel,* 224 F.3d at 381. In considering a disability benefits claimant's residual functional capacity, the ALJ must fully address all of the claimant's limitations. *Myers v. Apfel,* 238 F.3d at 621 (5th Cir.2001). A review of the transcript of the administrative hearing reveals, however, that the medical expert, Dr. Goldstein, testified in response to Myers' representative's cross-examination, that he was unable and unwilling to assess Myers' claims of depression, because he had no expertise in the area of mental health. (T. 48–49). The ALJ, therefore, limited his examination of the medical expert, in a manner that would elicit a response to the hypothetical question limiting Dr. Goldstein's opinion as to Myers'

capacity to work, solely to the claimed physical limitations, saying in part, ". . . I told [Dr. Goldstein] to limit [his evaluation] to strictly to the physical." (T. 49).

■ The ALJ's decision must include an assessment of a claimant's mental residual functional capacity at step four of the disability evaluation process, when, as here, the determination is made that the claimant's depression is severe. See *Richard v. Secretary of Health*, 894 F.Supp. 1045, 1052 (E.D.Tex.1995). In the instant case, the ALJ's findings clearly articulate an assessment of Myers' claimed mental impairments and a specific referral to the ALJ's completion of the Psychiatric Review Technique Form, in determining that Myers' depression and physical impairments did not preclude her from performing light work with limitations. (R. 16–17; 21–28). The ALJ may properly complete the functional assessment without the aid of a physician. *20 C.F.R. § 416.920a(d)*. Furthermore, the ALJ's findings as to Myers' mental residual functional capacity comport with the Psychiatric Review Technique and Mental Residual Functional Capacity Assessment completed in 1999 by psychiatrist, Dr. Boulas, in which the physician determined that Myers' depression was not disabling as she retained the ability to understand, remember, carry out simple instructions, use reasonable judgment, and respond to supervisors, co-workers and changes in a routine work setting. (R. 210–222). Additionally, the record indicates that Myers managed her depression with medication and had never been hospitalized for the condition. *Id.* The ALJ, in a hypothetical question posed to assess Myers' physical residual functional capacity, properly excluded her mental condition where the medical expert indicated that he had no mental health expertise and where a proper assessment of Myers' mental residual functional capacity was completed by the ALJ and is supported by the substantial evidence.

## III. The ALJ Properly Considered Myers' Ability to Work on a Regular Basis

Myers maintains that the ALJ, in determining that she can perform light work with limitations that exists in significant numbers in the national and local economy, made the finding by improperly relying upon the determination of Dr. Gibson, an examining consulting physician, that she could sit, stand and walk for "brief periods." *See* Plaintiff's Motion to Reverse and Remand (Entry # 15). Myers, therefore, urges that her ability to perform these functions for only brief periods, precludes her ability to work on a regular basis. *Id.*

The Fifth Circuit Court of Appeals has made clear that "[a] condition that does not allow a person to work on a regular basis precludes substantial gainful activity." *Watson v. Barnhart*, 288 F.3d at 218 (5th Cir.2002). A review of the record in the instant case, however, reveals that although Dr. Gibson did not define "brief," nor did he specify the amount of time that Myers could sit, stand or walk, the physician determined that Myers had joint pain with no severe immobility, gait or motor disorder, evidence of radiculopathy, lower spinal disorders and no history of pathologic fractures. (R. 237). The findings of Dr. Gibson comport with those of the consulting osteopath, Dr. Wilk, who determined, after examining Myers, that she was able to lift 25 lbs., occasionally lift 50 lbs., stand, sit or walk 6 hours per day and had an unlimited ability to push and/or pull. (R. 202–208). In assessing whether Myers was capable of continually being unable to engage in substantial gainful activity in accordance with 20 C.F.R. § 404.1509, the ALJ properly relied upon the vocational expert's ("VE") opinion that Myers could perform light work with limitations, in response to the ALJ's hypothetical question intimating that Myers had

the capability to "alternate between sitting and standing at will, lift no more than twenty pounds at times, frequent lifting or carrying objects up to ten pounds, further restrictions of no moving or dangerous equipment, no climbing or heights." (T. 51).

■ Once it is established that a disability claimant is unable to perform past relevant work and the ALJ has demonstrated that the claimant retains the residual functional capacity to perform other work that exists in significant numbers in the national and local economy, it becomes the plaintiff's burden to show that she is unable to perform the suggested gainful activity. *See Newton v. Apfel,* 209 F.3d at 452–53. In this instance, Myers offered no evidence supported by objective medical data, indicating that she would be unable to perform light work with limitations on a regular and continuing basis; nor, did Myers refute the vocational expert's assessment that she could perform such work and that the jobs existed in significant numbers in the national and local economy. (T. 51–52). The ALJ, in assessing Myers' residual functional capacity, properly relied upon the vocational expert's response to a hypothetical question which was premised upon Myers' capacity to perform work on a regular and continuing basis, as confirmed by the substantial evidence. *See Carey v. Apfel,* 230 F.3d at 146; *Bowling v. Shalala,* 36 F.3d at 431; 20 C.F.R. § 416.920(f).

Myers maintains that the vocational expert's testimony that she would not be able to engage and maintain competitive employment if she were required to lie down for two hours per day due to pain, established that she is unable to sustain gainful employment on a regular and continuing basis. *See* Plaintiff's Motion to Reverse and Remand (Entry # 15); (T.52). In assessing whether a disability claimant has the capacity to sustain gainful employment, it must be demonstrated that the individual can perform work on a regular and continuing basis, which constitutes having the capacity to perform work eight hours per day, five days per week, or an equivalent work schedule. See *Myers v. Apfel,* 238 F.3d at 620; *Watson v. Barnhart, id.*; see also *SSR 96–8p.* The ALJ, however, properly rejected the VE's testimony suggesting that Myers' complaints of pain would require her to lie down two hours per day during a work schedule, as the substantial evidence failed to support Myers' allegations with respect to pain and, accordingly, the vocational expert's testimony elicited by Myers' representative was not relevant as to her capacity to work on a regular and continuing basis. (R. 18). There was presented no objective medical data supporting Myers' allegations that she had pain requiring her to lie down two hours per day, five days per week, thereby, precluding her from sustaining gainful employment and, accordingly, the ALJ properly discounted the vocational expert's testimony in this regard, as it was not supported by the objective medical evidence. See *Chambliss v. Massanari,* 269 F.3d at 522.

## CONCLUSION

Following a review of the entire record, it is recommended that the ALJ's decision be affirmed as the findings comport with applicable legal standards and the substantial evidence and, accordingly, there has not been presented in this matter, a genuine issue necessitating the reversal of the Commissioner's decision. It is, therefore,

**RECOMMENDED** that Myers' Motion to Reverse and Remand (Entry # 15) be **DENIED.** Further, it is

**RECOMMENDED** that the Commissioner's Motion for Summary Judgment (Entry # 16) be **GRANTED.** Additionally, it is

**RECOMMENDED** that Final Judgment be entered in favor of the Commis-

sioner and that this matter be **DISMISSED with prejudice** from the Court's docket.

The Clerk shall file this Memorandum and Recommendations and provide the parties a true copy. The failure to file written objections to the proposed findings and recommendations within ten (10) days of the entry of this Memorandum and Recommendations, may bar an aggrieved party, from a *de novo* review by the district court and, except upon grounds of plain error, from attacking the proposed factual findings and legal conclusions, on appeal. See *Acuna v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir.2000); *Douglass v. United Services Automobile Assoc.,* 79 F.3d 1415, 1424 (5th Cir.1996)(*en banc*); see also *Crawford v. Falcon Drilling Co., Inc.,* 131 F.3d 1120, 1123–4 (5th Cir.1997); and, 28 U.S.C. § 636(b)(1)(C).